UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.   22-CR-80189-RLR

UNITED STATES OF AMERICA,

  Plaintiff,

v.

WALTER BROOMS,

  Defendant.

_____/

**REPORT AND RECOMMENDATION ON MOTION TO SUPPRESS**

Walter Brooms is charged with being a felon in possession of a Glock semi-automatic pistol on June 24, 2022. ECF No. 8. He moves to suppress (1) statements made to the FBI on that day, and (2) physical evidence later seized from an apartment and a vehicle. ECF No. 37. Mr. Brooms argues that his statements were obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966). He also argues that the evidence seized from the apartment and the vehicle must be suppressed as fruits of that violation. Separately, he argues that there were false representations in the affidavit in support of the search warrant for the vehicle that independently require suppression of the items seized from the vehicle.

I have reviewed Mr. Brooms' motion and the Government's Response. ECF No. 46. I held an evidentiary hearing on July 27, 2023. ECF No. 52. I am fully advised and this matter is ripe for decision. For the following reasons, the Motion to Suppress should be DENIED.

## I.    FACTS

The evidence at the hearing comprised (1) testimony from Mr. Brooms, Oshane Milton, FBI Special Agent Daniel Szczepanski, and Palm Beach Sheriff's Office Deputy Jonathan Garten, (2) Defense Exhibits A-K, and (3) Government's Exhibits 1-18. I found all of the witnesses to be credible. I make the following factual findings.

### 1.    *Wellington House Search*

On June 24, 2022, at approximately 3:40 p.m., a federal search warrant was executed at 14543 Horseshoe Trace, Wellington, Florida. Govt. Ex. 1.[1] The warrant authorized the police to seize 34 categories of evidence, including any firearms found on the premises. Special Agent Szczepanski was the lead case agent.

The first law enforcement officers to enter the building were the armed SWAT team, which used "flash bang" devices as part of the entry. Seven people were present in the house — Mr. Brooms, Camarion Allen, Oshane Milton, Yohance Smith, Victor Allen Sr., Victor Allen Jr., Varian Allen. It was not Mr. Brooms' residence. He was asleep in Camarion Allen's bedroom when the police arrived. He was ordered out of the house. His hands were restrained behind his back using flexi-cuffs. He was directed to an area under a tree in front of the house and eventually placed in a chair. He was not free to leave.[2] He remained seated there for approximately four hours. At

---

[1] The warrant affidavit was not offered into evidence.

[2] Special Agent Szczepanski testified that Mr. Brooms was not told he was free to leave and, in fact, was not free to leave. Mr. Brooms testified that he did not believe he was free to leave.

least one law enforcement officer remained with Mr. Brooms at all times. He was never advised of his *Miranda* rights.

Mr. Brooms had been dropped off at the Wellington house earlier that day by his child's mother. Mr. Brooms carried a dark Adidas backpack into the house.

At approximately 4:20 p.m., after the SWAT team reported that the search location was secured, Special Agent Szczepanski arrived on scene. At approximately 6:30 p.m., he told Mr. Brooms and the others that they would be released soon. In response to the agent's statement, Mr. Brooms asked if he could get back "his stuff" that was in the house. Special Agent Szczepanski asked what "stuff" Mr. Brooms was talking about. Mr. Brooms said it was a black bag, keys, AirPods, a wallet, cash, and a photo of Mr. Brooms' child. Mr. Brooms said these items were in the room where he had been sleeping,

Special Agent Szczepanski went to that room to look for these items. He found the bag, which was open. He also found the keys, the Airpods, and a wallet that contained Mr. Brooms' identification and the child's photo. Govt. Ex. 8. He was told by other law enforcement officers that a firearm (a Glock pistol) had been found in the bag, removed, and was being processed as evidence. *See* Govt. Ex. 9.

Special Agent Szczepanski took photographs of the bag, the keys, and the Glock pistol. He went back outside and spoke to Mr. Brooms. He showed Mr. Brooms the photograph of the bag (Govt. Ex. 6) and asked if it was his bag. Mr. Brooms said it was his. The agent then showed the photograph of the keys (Govt. Ex. 7) and asked if the keys belonged to Mr. Brooms. Mr. Brooms said they did. The agent then showed

a photo of the Glock and asked if it belonged to Mr. Brooms. Mr. Brooms said it was his gun and it was "clean." The agent then asked if Mr. Brooms was a convicted felon. Mr. Brooms said he was not, which was consistent with the information then-contained in the NCIC criminal history database. In fact, unbeknownst to the FBI, Mr. Brooms had pled guilty earlier that day to a felony in state court. Govt. Exs. 10, 11.

Mr. Brooms was released at approximately 7:30 p.m. His mother picked him up. Special Agent Szczepanski testified that Mr. Brooms was released because there was "no longer a need to keep him secured."[3]

2.    *Boynton Beach Apartment Search*

At some point after the Wellington search, Deputy Garten learned that Mr. Brooms had been a convicted felon at the time of the search on June 24, 2022.[4] On November 15, 2022, he obtained a state arrest warrant for Mr. Brooms as a felon-in-possession of a firearm. *See* Govt. Ex. 13.[5] The probable cause affidavit supporting

---

[3] The Government's Response also says that on August 25, 2022, the Government obtained a warrant for Mr. Brooms' DNA. That warrant is not in evidence. According to the Government, the supporting affidavit for the warrant included Mr. Brooms' statements to Special Agent Szczepanski. ECF No. 46 at 6-7. Mr. Brooms' DNA later was matched to DNA found on the Glock pistol. *Id*.; Def. Ex. F.

[4] The record does not reflect why, after June 24, Deputy Garten further investigated whether Mr. Brooms was a felon.

[5] According to the Government's Response, after June 24, "the FBI reviewed static surveillance video that was captured outside [the Wellington house]." The video showed Mr. Brooms arriving at the house at approximately 10:42 a.m. carrying the black bag. ECF No. 46 at 4-5. No witness testified to when the video was reviewed.

the warrant quoted Mr. Brooms' statements to Special Agent Szczepanski about the Glock pistol. *Id.*

The next day, November 16, police surveillance units saw a Jeep Cherokee in an area of West Palm Beach where Mr. Brooms was known to "hang out." Police knew that Mr. Brooms had previously been driving a Chevrolet Suburban that had been rented by Mr. Brooms' mother from Sixt Rental Cars. She had recently returned the Suburban and rented the Jeep Cherokee from Sixt instead.

Police began following the Jeep using a helicopter and drones as surveillance aids. The Jeep stopped at a location in Boynton Beach. A person matching Mr. Brooms' physical description was observed getting out of the driver's door of the Jeep. No one else got out of the car. About 20 minutes later, the same person got into the Jeep through the driver's door. The Jeep then drove to an apartment complex in Boynton Beach. As the Jeep entered the apartment complex, surveillance was briefly lost. When the Jeep was located, it was parked outside one of the apartment buildings.

Police did not know if anyone was still in the car. They approached it, but it had heavily tinted windows that prevented the officers from seeing inside. They then broke one of the windows. No one was in the Jeep.

The police began canvassing the area. A concerned citizen approached one of the officers to report that he had recently seen someone run into Apartment 9305. The concerned citizen was shown a photo of Mr. Brooms and identified him as the

5

person seen entering Apartment 9305. The police were able to get into Apartment 9305 and arrested Mr. Brooms there.

They then secured the apartment and obtained a state search warrant. The affiant swore that officers had seen Mr. Brooms throw an object into the toilet when they entered Apartment 9305 to arrest him. Govt. Exh. 14. The state court issued a search warrant to seize cellular devices, firearms, ammunition, and correspondence related to Mr. Brooms. *Id*. Officers seized multiple cell phones, a firearm, keys to the Jeep, approximately $74,000 in U.S. currency, an iPad, a laptop, bank cards, and bank paperwork. Govt. Ex. 15. The Jeep keys were found in a cereal box.

3.      *Jeep Cherokee Search*

The police then obtained a search warrant for the Jeep Cherokee. Govt. Ex. 16. The search warrant authorized the police to seize cellular devices, firearms, ammunition, correspondence related to Mr. Brooms, and fraudulent items including credit/debit cards. *Id*. Among the items the police seized from the Jeep were a Glock pistol, two semi-automatic rifles, and a loaded rifle magazine. Govt. Ex. 17.

## II.      DISCUSSION

Mr. Brooms moves to suppress his statement as being taken in violation of his *Miranda* rights. He also moves to suppress the items seized from Apartment 9305 and the Jeep Cherokee as fruits of the *Miranda* violation. He also argues that the Jeep Cherokee search warrant was invalid because the supporting affidavit misrepresented that he was driving the car.  The Government does not challenge Mr. Brooms' standing to suppress his statements or the subsequent searches.

Mr. Brooms bears the burden of proving by a preponderance of the evidence that he was in custody when he made his statements to the FBI. *United States v. de la Fuente*, 548 F.2d 528, 533 (5th Cir. 1977); *United States v. Peck*, 17 F. Supp. 3d 1345 (N.D. Ga. 2014) (collecting cases). The Government bears the burden of proving that the defendant's in-custody statements were obtained in compliance with the requirements of *Miranda* and were otherwise voluntary, or that some exception to the *Miranda* rule applies. *United States v. Lewis*, No. CR421-197, 2022 WL 2784473, at *5 (S.D. Ga. June 9, 2022) (collecting cases), *report and recommendation adopted*, No. 4:21-CR-197, 2022 WL 2340548 (S.D. Ga. June 29, 2022).

Mr. Brooms was lawfully detained. In *Michigan v. Summers*, 452 U.S. 692 (1981), the United States Supreme Court held that detaining the occupant of a search location for the duration of the search was categorically reasonable. *See Bailey v. United States*, 568 U.S. 186 (2013) (categorically, the occupant of a location being searched can be detained incident to the search, even without individualized suspicion); *Muehler v. Mena*, 544 U.S. 93, 95–96 (2005).

Nevertheless, lawful investigative detention can gestate into a custodial arrest. If that happens, the right to *Miranda* warnings attaches. *See Miranda*, 384 U.S. at 479; *Dickerson v. United States*, 530 U.S. 428, 435 (2000).

> To determine whether a particular interaction amounted to a "custodial interrogation," the court must determine whether, under the circumstances, a "reasonable person would have understood his freedom of action to have been curtailed to a degree associated with formal arrest." *United States v. Luna-Encinas,* 603 F.3d 876, 881 (11th Cir. 2010) (quoting *United States v. Newton*, 369 F.3d 659, 672 (2d. Cir. 2004)) (emphasis omitted). To make such a determination, the court considers the totality of the circumstances, including: the location and

7

duration of the detention, "whether the officers brandished weapons, touched the suspect, or used language or a tone that indicated the compliance with the officers could be compelled." *Luna-Encinas*, 603 F.3d at 881 (quoting *United States v. Street,* 472 F.3d 1298, 1309 (11th Cir. 2006); citing *United States v. Brown,* 441 F.3d 1330, 1348 (11th Cir. 2006); *United States v. Medina-Villa,* 567 F.3d 507, 519 (9th Cir. 2009)). Importantly, even if a reasonable person would feel constrained not to leave a police encounter *at a particular moment* does not render the interaction a "custodial interrogation" for the purposes of the Fifth Amendment. *United States v. Street,* 472 F.3d 1298, 1310 (11th Cir. 2006). The question is rather whether the detention *as a whole* involved a "highly intrusive coercive atmosphere" typically associated with an arrest. *Luna-Encinas,* 603 F.3d at 881, 882 (quoting U*nited States v. Acosta,* 363 F.3d 1141, 1150 (11th Cir. 2004)).

*United States v. Hicks,* No. 21-CR-80040, 2021 WL 4307035, at *2 (S.D. Fla. Sept. 21, 2021) (J. Rosenberg).

A reasonable person in Mr. Brooms' situation at the time he made his statements to Special Agent Szczepanski would not have felt his freedom of action was constrained to a degree associated with formal arrest. Most notably, immediately before Mr. Brooms made the statements, the FBI unconditionally told him that he was going to be released from detention and permitted to leave soon. His statements arose in a brief, non-threatening, public conversation where no firearms were displayed, no threats were made, no voices were raised, and no physical force was used. He has not shown that under the totality of these circumstances he was in custody. Therefore, the FBI was not required to advise him of his *Miranda* rights.

Even if Mr. Brooms' *Miranda* rights were violated, only his statements would be suppressed. "*Miranda* does not require the exclusion of physical evidence that is discovered on the basis of a voluntary, although unwarned, statement." *United States v. Jackson*, 506 F.3d 1358, 1361 (11th Cir. 2007). "'While the failure to comply with

*Miranda* creates a presumption that a confession was not voluntary, an examination of the totality of the circumstances is necessary to determine whether the confession was actually voluntarily given.' Threats of violence or promises of leniency can render a statement involuntary." *United States v. Robinson*, 760 F. App'x 762, 764 (11th Cir. 2019) (internal citation omitted).

> In determining whether a statement was made voluntarily, courts evaluate "the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation." *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). Those cases where courts have found confessions to be involuntary "have all contained a substantial element of coercive police conduct." *Colorado v. Connelly*, 479 U.S. 157, 163-64 (1986). Factors considered include the defendant's intelligence, the length of his detention, the nature of the interrogation, the use of any physical force against him, or the use of any promises or inducements by police. *Hubbard v. Haley*, 317 F.3d 1245, 1253 (11th Cir. 2003). "Sufficiently coercive conduct normally involves subjecting the accused to an exhaustingly long interrogation, the application of physical force or the threat to do so, or the making of a promise that induces a confession." *United States v. Thompson*, 422 F.3d 1285, 1295-96 (11th Cir. 2005) (internal quotes and citation omitted).

*Lewis*, 2022 WL 2784473, at *7.

Mr. Brooms' statements were voluntary, based on the totality of the circumstances. He was restrained with flexi-cuffs, but the use of handcuffs does not alone establish coercion. *Shriner v. Wainwright*, 715 F.2d 1452, 1456 (11th Cir. 1983). There is no evidence that officers used, or threatened to use, physical force. He had been provided with water and shade. No promises were made to Mr. Brooms to induce him to make the statements. Rather, Special Agent Szczepanski credibly testified that Mr. Brooms spoke only after he had been unconditionally told that he was going

to be released shortly. The period of questioning was brief and informal. Mr. Brooms was questioned in public view, not in a car or interrogation room.

4.      *There were no material false statements in the state search warrant affidavits*

Mr. Brooms independently moves to suppress the evidence seized from the Jeep Cherokee under *Franks v. Delaware*, 438 U.S. 154 (1978). A *Franks* hearing is warranted where a defendant "makes a substantial preliminary showing" that an affiant made intentionally false or recklessly misleading statements (or omissions), and those statements are "necessary to the finding of probable cause." *Franks*, 438 U.S. at 155–56. "When assessing whether the alleged false statements and omissions were material, the trial court is to disregard those portions of the affidavit which the defendant has shown are arguably false and misleading." *United States v. Sarras*, 575 F.3d 1191, 1218 (11th Cir. 2009) (citations omitted). "The defendant bears the burden of showing that, absent those misrepresentations or omissions, probable cause would have been lacking." *Id.* (citations and internal quotation marks omitted).

Mr. Brooms argues that the affidavit in support of the warrant for the Jeep Cherokee misrepresented that he had been driving the vehicle. The relevant language from the affidavit is:

> Lastly, it should be noted that BROOMS III was viewed exiting the Jeep Grand Cherokee when he arrived at the target location 9305 Pinehurst Drive, Boynton Beach, FL where he was later taken into custody as stated earlier.

Govt. Exh. 16. Mr. Brooms argues that this statement is inaccurate because there was no direct evidence that he got out of the car.

10

There was probable cause to search the Jeep even without this statement. The affiant swore that the Jeep was rented in Mr. Brooms' mother's name. Shortly after the Jeep arrived at the apartment complex, a concerned citizen had seen Mr. Brooms running into Apartment 9305. The police had seen a large bag in the backseat of the Jeep.  When they entered the apartment, they saw Mr. Brooms trying to throw his phone down the toilet. The keys to the Jeep were found in a cereal box. Also found in the apartment were firearms, substantial evidence of ongoing extensive financial frauds, and approximately $73,000 in U.S. currency. These facts established probable cause to believe that evidence of crimes would be found in the Jeep, and were compelling circumstantial evidence that Mr. Brooms had just been driving the Jeep.

<u>REPORT AND RECOMMENDATION</u>

WHEREFORE, it is RECOMMENDED that Mr. Brooms' Motion to Suppress be DENIED.

## <u>NOTICE OF RIGHT TO OBJECT</u>

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Robin L. Rosenberg, United States District Court Judge for the Southern District of Florida, **on or before August 8, 2023**. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

**DONE and SUBMITTED** in Chambers at West Palm Beach, Palm Beach County, in the Southern District of Florida, this 1st day of August, 2023.

BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE